UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANK ULBRICK, JR.,

        Plaintiff,

v.                                                Case No. 08-13764
                                                     Honorable Julian Abele Cook, Jr.

UPR PRODUCTS, INC.,

        Defendant.

ORDER

In this case, the Plaintiff, Frank Ulbrick, Jr., acting in his capacity as the personal representative of the decedent estates of his brothers, Michael Anthony Ulbrick and Christopher Ryan Ulbrick, filed a complaint in which he charged the Defendant, UPR Products, Inc. (referred hereinafter as "UPR"), with being directly responsible for the untimely demise of these two men, both of whom were fatally injured on October 12, 2006, while they were the driver and occupant of a 1988 Mustang motor vehicle. In his complaint, the Plaintiff attributed their deaths directly, among other things, to the negligence of UPR in the manufacture of an integral part of the decedents' automobile. This accusation has been denied by UPR.

Currently before the Court is the Plaintiff's appeal of a decision by Magistrate Judge Mona K. Mazjoub who, *inter alia*, granted UPR's motion to exclude the Plaintiff's proposed expert witness from providing testimony during a trial.

I.

Subsequent to the fatal accident in 2006, the decedents' father asked Bob McSwain, a friend

of the family and a "racing buddy," to dispose of the vehicle. Acting in response to this request, McSwain - a racing mechanic - took possession of the vehicle and brought it to his garage where extensive photographs of the damaged vehicle were taken. Thereafter, he - after personally examining the Mustang in an attempt to determine the cause of the accident - concluded that (1) the lower left control arm had been improperly and/or incompletely welded, (2) this arm had broken immediately prior to the accident, and (3) the breakage caused Michael - as the driver - to lose control of his vehicle. McSwain thereupon disassembled the vehicle, disposed most of it, and retained only portions of the lower control arms as well as a few other parts for sentimental or monetary value.

On June 28, 2008, this lawsuit was filed in the Macomb County Circuit Court of Michigan, and was subsequently removed by UPR to this Court on the basis of its diversity jurisdiction.[1] The Plaintiff alleges that the lower control arms were manufactured by UPR - an allegation that has been denied. In June 2009, the Court entered a scheduling order which required, *inter alia*, a party "who proffer[ed] a witness as an expert, [to] provide the opponent and the Court with a written report and all other pertinent forms of disclosures (e.g., compensation and testimony in other cases) that are required under Fed. R. Civ. P. 26(a)(2) not later than ninety (90) days prior to the date of trial."

As the docket for this case reflects, discovery has not proceeded smoothly, with the parties having brought multiple discovery-related motions and freely hurling accusations in which one party contends that the adversary had not fulfilled the requisite discovery obligations, as authorized

---

[1] An amended complaint was filed on November 24, 2008.

2

by the Federal Rules of Civil Procedure. The balance of this order will be confined to a discussion of only those issues which specifically relate to the pending appeal.

On October 7, 2008, UPR forwarded a set of interrogatories to the Plaintiff, who filed his response on January 15, 2009. However, UPR concluded that his responses to its set of interrogatories which had sought specific information (including fourteen sub-parts) about his proposed expert witnesses and their opinions ("Interrogatory 51") were insufficient. Although McSwain was deposed on September 1, 2009, UPR contends that his deposition was insufficient because he had not been definitively identified as an expert in this action. Rather, UPR opined that McSwain was deposed as a friend of the family who had prior knowledge of, and was responsible for the dismantling and the ultimate disposition of, the Mustang.[2]

During the month of November 2009, UPR filed a motion in which it petitioned Magistrate Judge Majzoub to, *inter alia*, (1) compel the Plaintiff to provide specific answers to Interrogatory 51; and (2) require him to produce his expert witnesses for depositions. The Plaintiff responded with a supplemental answer to Interrogatory 51, in which he itemized the names of several persons who would be called by him during the trial as expert witnesses. But UPR insisted that the Plaintiff's latest response was still incomplete in light of the detailed information that it had sought from him. On February 26, 2010, the Plaintiff provided UPR with a second supplemental answer to Interrogatory 51, which included the name of another proposed expert witness without adding any more information about the other persons who had been previously identified by him as his prospective expert witnesses.

---

[2]The Court notes, however, that UPR referred to McSwain as "Plaintiff's expert witness[]" in the deposition notice.

During a hearing on UPR's motion on March 10th, the Plaintiff advised Magistrate Judge Majzoub that McSwain, as well as James Sprague, Nitan Paranjpe, and David Moore, would be the only individuals who would be called by him to testify as expert witnesses. However, he asserted that these expert-nominees were not ready to be deposed because UPR had failed to provide him with an adequate quantity of discovery information upon which their professional evaluations and conclusions could be based. Notwithstanding, Magistrate Judge Majzoub issued an order two days later (March 12th) in which she, *inter alia*, directed the Plaintiff to (1) provide UPR with thorough answers to Interrogatory 51 within a period of twenty-one days thereafter, (2) transmit the reports of all expert witnesses to UPR within the same time frame, and (3) arrange to have all of his proposed experts available for deposition on or before April 30, 2010.

In his supplemental answers to Interrogatory 51, the Plaintiff acknowledged that McSwain had not prepared a formal report, and the majority of these answers simply made global reference to his prior deposition testimony. In directing the Plaintiff to supplement this response, Magistrate Judge Majzoub rejected his contention that the content of McSwain's deposition was a sufficient basis upon which to satisfy the obligatory disclosure and expert report standards under the Federal Rules of Civil Procedure.

On March 31st, the Plaintiff served another supplemental answer to Interrogatory 51, in which he listed only McSwain and Sprague as his prospective expert witnesses. UPR described these answers as being incomplete. On April 2nd, the Plaintiff submitted Sprague's expert report to UPR. UPR rejected this proffer, maintaining that the Sprague report was not only "very limited and provide[d] no specific detail," but also failed to comply with the basic requirements of Federal Rule of Civil Procedure 26. Even though several dates were scheduled for Sprague's deposition,

4

all of them were canceled by the Plaintiff, who asserted that the cancellations were due to the failure by UPR to provide him with the requisite discovery upon which the expert opinions depended. Significantly, the April 30th deadline that had been established by Magistrate Judge Majzoub passed without any of the depositions being conducted.

On May 27th, UPR filed a motion in which it asked Magistrate Judge Majzoub to (1) prevent the Plaintiff from presenting any expert witnesses at trial; and (2) dismiss the action with prejudice because of his failure to comply with multiple court orders. The Plaintiff, in response, agreed to the exclusion of all expert witnesses except McSwain, who would be his only expert witness. Furthermore, the Plaintiff contended that he had provided UPR with full answers to all of its interrogatories, including Interrogatory 51. Although he acknowledged that no expert report had been prepared by McSwain, the Plaintiff argued that the information that would have been included in an expert report had already been provided to UPR through his disclosures and McSwain's earlier deposition.

On December 9, 2010, Magistrate Judge Majzoub issued an order in which she denied UPR's request for a dismissal of this action but granted its request that the Plaintiff be precluded from presenting McSwain as an expert witness at trial.

The Plaintiff timely appealed this ruling, again contending that all of the information required in an expert report had already been provided to UPR through the September 2009 deposition of McSwain. The Plaintiff argues that he has satisfied and/or substantially complied with the requirements of Rule 26(a)(2)(B); and, furthermore, any failure to strictly comply with this Rule was harmless. He also points out that the exclusion of this proposed expert witness is not mandated by Rule 37(c)(1).

5

II.

If a litigant makes a timely objection to a magistrate judge's ruling on a nondispositive pretrial matter, the district court may "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); see also 28 U.S.C. § 636(b)(1). The "clearly erroneous" standard does not permit a district court to reverse the magistrate judge's finding simply because it would have decided the matter differently. *Anderson v. City of Bessemer, N.C.*, 470 U.S. 564, 573 (1985). Rather, a "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

III.

The Federal Rules of Civil Procedure require that the disclosure of proposed expert testimony "be accompanied by a written report - prepared and signed by the witness - if the witness is one retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). "If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Under these circumstances, the court is also permitted to enter - as an additional or substitute sanction - any of the sanctions listed in Rule 37(b)(2)(A)(I) - (vi). Finally, if a party fails to obey a discovery order, the court "may issue further just orders . . . [including] prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A).

Although the Plaintiff has not disputed that McSwain was subject to the expert report

6

requirement, the Court will first evaluate whether McSwain was "retained or specially employed to provide expert testimony in the case," and thus was obliged by the terms of Fed. R. Civ. P. 26(a)(2)(B) to provide a written report. If a witness falls within this requirement is determined primarily by the scope, substance, and source of the intended testimony - not on whether the witness is being compensated. *See Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 871 (6th Cir. 2007). Treating physicians, for example, may not be required to submit a written report as long as their testimony relates only to their treatment of the individual and opinions formed by them at the time of treatment. *E.g.*, *id.*; *see also Gorajczyk v. City of St. Clair Shores*, No. 08-14764, 2010 WL 3245432, at *4-5 (E.D. Mich. Aug. 17, 2010) (listing factors for determining whether treating physician's proposed testimony requires filing of expert report); *Bekaert Corp. v. City of Dyersburg*, 256 F.R.D. 573 (W.D. Tenn. 2009) (extending this analysis to non-physician expert witnesses). By analogy, McSwain would seemingly be required to file an expert report, inasmuch as his opinions were formed not, for example, in an attempt to repair the vehicle, but rather in an effort to determine the cause of the accident. Thus, he was functioning analogously to a physician performing an "after-the-fact" diagnosis rather than providing "in-the-moment" or "on-the-scene" treatment. *Compare Fielden*, 482 F.3d at 869 (physician who forms opinion as to causation in course of treating patient is not required to submit report of expert), *with Meyers v. Nat'l R.R. Passenger Corp.*, 619 F.3d 728, 734-35 (7th Cir. 2010) ("[A] treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one 'retained or specially employed to provide expert testimony in the case,' and thus is required to submit an expert report in accordance with Rule 26(a)(2)."). Moreover, his opinions were not formed as a

7

result of witnessing or experiencing the accident which is the subject matter of this lawsuit. Rather, they were presumably formed as a result of a process that any expert witness would undertake; namely, an "after-the-fact" examination of the vehicle in question. *See* Fed. R. Civ. P. 26 advisory committee's notes to 1970 amendments ("It should be noted that the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness."). Finally, it is worth noting that, by virtue of the disassembling and subsequent disposal of most of the vehicle by McSwain, he is the *only* person who had the opportunity to undertake an examination of the entire vehicle. While the exact parameters of the report requirement in Rule 26 are not well-defined, the foregoing analysis demonstrates that the judicial directive which required the production of McSwain's written expert report is not "clearly erroneous."

IV.

The Court notes that the Plaintiff has never contended that McSwain was not subject to the expert report requirement. In fact, the sole ground for this appeal is his contention that he complied or substantially complied with the expert report requirement, as defined by the Federal Rules of Civil Procedure. Furthermore, it is the Plaintiff's belief that McSwain's deposition - standing alone - satisfied all of the requirements for the production of an expert report under Rule 26(a)(2)(B). However, the record clearly indicates that the Plaintiff was specifically ordered by Magistrate Judge Majzoub to provide UPR with a copy of McSwain's expert report. Furthermore, there is evidence that the Plaintiff was warned that his failure to comply with her directive could result in the preclusion of McSwain as an expert witness. Significantly, this order was entered long after the

8

deposition of McSwain that, in the opinion of the Plaintiff, is sufficient to satisfy the report requirements. In her March 2010 order, Magistrate Judge Majzoub rejected the Plaintiff's assertion that he could discharge his disclosure obligations simply by referring to the McSwain deposition. Rather, she ordered him to (1) amend his responses to Interrogatory 51 so as to "answer in full and by sub-part for each of the four named experts," and (2) submit to UPR reports for each of his proposed expert witnesses, including McSwain.

The Plaintiff has provided this Court no explanation whatsoever for his failure to submit McSwain's expert report to UPR. A litigant cannot blithely ignore court orders and then object to the consequent sanctions on the ground that he did not believe that the directives were necessary. In his appeal of Magistrate Judge Majzoub's order, the Plaintiff - for the first time - specifically lists those parts of McSwain's deposition testimony that purportedly satisfy each requirement of Rule 26(a)(2)(B). The Court does not understand the inexplicable failure by the Plaintiff to direct McSwain to prepare a full report if all of the required information was purportedly readily available and already on the record. Moreover, the Plaintiff not even attempted to provide the Court with an explanation. In light of the foregoing, the Court fully agrees with Magistrate Judge Majzoub's determination that the Plaintiff has neither satisfied nor substantially complied with his obligation to provide McSwain's expert report.

Furthermore, the Court finds no error - much less a clear error - in Magistrate Judge Majzoub's determination that the Plaintiff's failure to provide McSwain's report was not harmless. The Sixth Circuit has construed "harmless" as involving "an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003) (citation and internal quotation marks omitted). Neither aspect appears to have

9

been satisfied here.

There can be no claim that the Plaintiff's failure to submit the report was an honest mistake. He, despite having been explicitly directed to convey McSwain's expert report to UPR, simply chose not to do so. Moreover, the argument that has been raised by him on this appeal - that the report was not needed because all of the relevant information had already been provided to UPR - is not a good and sufficient ground for an honest mistake where this precise argument was raised to, and rejected by, the presiding Magistrate Judge.

As Magistrate Judge Majzoub found, the Plaintiff's noncompliance does harm UPR "where [UPR] has been left without the expert's report and this expert is allegedly the only one to have dismantled the vehicle in question prior to its destruction and the filing of this action." Moreover, an expert deposition is not a replacement for an expert report. On the contrary, the Federal Rules of Civil Procedure specifically mandate that an expert deposition may only occur *after* the expert report has been provided. Fed. R. Civ. P. 26(b)(4)(A) ("A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided."). The expert report allows the opposing party to properly prepare for the deposition and narrows the terrain that must be covered therein. These functions cannot be served if the report does not precede the deposition. *Cf. Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008) (citations omitted) ("The purpose of Rule 26(a)(2) is to provide notice to opposing counsel - before the deposition - as to what the expert witness will testify, and this purpose would be completely undermined if parties were allowed to cure deficient reports with later deposition testimony."). This Rule clearly contemplates that the expert report and the expert deposition may serve different and

10

complementary purposes. Here, UPR was forced to depose McSwain without the benefit of his report. This is not a case of a deficient expert report, but rather an entirely missing expert report. For these reasons, the Plaintiff's noncompliance with the court orders here at issue cannot be deemed harmless. Therefore, the Court concludes that Magistrate Judge Majzoub's order contained no error, much less the "clear error" that would be required to set aside that order.

V.

Following its examination of the record in this cause, the Court denies the Plaintiff's appeal of Magistrate Judge Majzoub's directive which precluded him from presenting McSwain as an expert witness during a trial in this action.

IT IS SO ORDERED.

Dated:  February 8, 2011             s/Julian Abele Cook, Jr.
       Detroit, Michigan             JULIAN ABELE COOK, JR.
                                                   United States District Court Judge